2003 OK 67

**U.S. MORTGAGE, Plaintiff,**

v.

**Donald D. LAUBACH, Denny L. Hurst, Defendants,**

**William A. Strong, II, Carolyn E. Strong, and Defendants–Appellants,**

**Oak Tree Home Owners Association, Inc., Defendant–Appellee.**

**Marquis Marie Hurst and Eagleton, Nicholson, Pordos & Pardue, P.C., Third–Party Plaintiffs–Appellees,**

v.

**Donald D. Laubach, Third–Party Defendant,**

**William A. Strong, II, Carolyn E. Strong, Third–Party Defendants–Appellants,**

and

**Oak Tree Home Owners Association, Inc., Third–Party Defendant–Appellee.**

No. 98,902.

Supreme Court of Oklahoma.

July 1, 2003.

Kelley L. Cornelius, Oklahoma City, OK, for Appellants William A. Strong II and Carolyn E. Strong.

W. David Pardue, Jeffrey M. Love, Oklahoma City, OK, for Appellees Marquis Marie Hurst and Eagleton, Nicholson, Pordos & Pardue, P.C.

Robert C. Smith, Jr., Oklahoma City, OK, for Appellee Oak Tree Home Owners Association, Inc.[2]

OPALA, V.C.J.

¶ 1 The issue presented by this appeal is whether Strong creditors' judgment lien retained its efficacy at the time the trial court was called upon to determine the order of priority among the competing liens. We answer in the negative.

## I

### THE ANATOMY OF LITIGATION

¶ 2 U.S. Mortgage, the holder of a mortgage on Donald Laubach's (Laubach) real property located in Oklahoma County, brought a foreclosure suit after Laubach defaulted on the mortgage payments. U.S. Mortgage named as defendants Laubach and three lienholders—Denny Hurst, William A. Strong II and Carolyn E. Strong (Strong creditors) and the Oak Tree Home Owners Association, Inc. (Association).

¶ 3 Strong creditors obtained in Missouri a federal-court judgment against Laubach and registered it on *21 August 1995* in the U.S. District Court of the Western District of Oklahoma.[3] They then perfected the federal-court judgment as a lien by filing an affidavit of judgment in the Oklahoma County Clerk's office on *3 September 1998*. Danny Hurst obtained a judgment against Laubach in Blaine County on 18 January 1995. His lien was created by filing a Statement of Judgment in the Oklahoma County Clerk's office on *18 August 1999*. He renewed his judgment against Laubach by filing a notice of renewal in the Blaine County Court Clerk's office on 14 December 1999 and recording a certified copy of the notice of renewal in the Oklahoma County Clerk's office the following day. Association claims an assessment lien on the same property.

¶ 4 At mid-litigation Denny Hurst assigned all his interest in the judgment (and judgment lien) to Marquis Marie Hurst (75%) and to Eagleton, Nicholson, Pordos, & Pardue (25%) (collectively called Hurst creditors or third-party plaintiffs). Hurst creditors were granted leave to intervene as third-party plaintiffs. They named Laubach, Strong creditors and Association as third-party defendants. Strong creditors cross-claimed against Laubach, Hurst creditors and Association. Association counterclaimed against Hurst creditors and cross-claimed against Laubach and Strong creditors.

¶ 5 U.S. Mortgage moved for summary judgment, arguing that it held a valid first

2. Identified herein are only those counsel of the parties whose names appear on the appellate briefs.

3. For an explanation of registration requirements for out-of-district federal-court judgments, see Part IV(A) *infra*.

lien on the property in suit. All of the parties except Laubach conceded U.S. Mortgage's priority status. Laubach objected to summary adjudication on the ground that there were material issues of fact as to the amount owed, the escrow paid and the amount of attorney's fees. Strong and Hurst creditors countered with separate summary judgment motions. Strong creditors claimed that, based on priority in time, their judgment lien is superior to that of Hurst creditors and of the Association.[4] According to Hurst creditors (a) Strong creditors' lien had expired and was hence ineffective and (b) they had a *second lien* which is prior to that of Association. Association adopted Hurst creditors' position that Strong creditors' lien had expired. It also conceded that its assessment lien was inferior to that of U.S. Mortgage and Hurst creditors.

¶ 6 The trial court struck Strong creditors' answer to Hurst creditors' motion for summary judgment, declaring that it was filed one day late in violation of local court Rule 37.[5] The trial court (a) *gave* summary judgment to Hurst creditors and denied Strong creditors' motion for like relief, (b) *declared* that Strong creditors obtained a Missouri federal-court judgment and registered it for enforcement as a domestic judgment on 21 August 1995 in the U.S. District Court for the Western District of Oklahoma, (c) *declared* that Strong creditors failed to file in the county clerk's office either a notice of renewal of judgment, a garnishment summons issued against the judgment debtor (Laubach) or a notice of income assignment on or before 21 August 2000, *concluding* that Strong creditors' judgment lien expired by operation of 12 O.S.Supp.1997 § 759(C)[6] and was hence no longer efficacious, and (d) *determined* the *order of priority* among the liens upon the real property in suit—U.S. Mortgage (first lien), Hurst creditors (second lien), Association (third lien)—as well as *the amount* of Hurst creditors' and Association's lien, and (e) *directed* that Hurst creditors' lien be satisfied from the proceeds, if any remain, of the sale of the property in accordance with the order of priorities. The court *denied* Strong creditors' quest for new trial.

¶ 7 It is Strong creditors' appeal that stands retained for this court's disposition and is now under review.

## II

### STANDARD OF REVIEW ON SUMMARY PROCESS

¶ 8 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes[7]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[8] Summary process is applied where neither the material facts nor any inferences that may be drawn

---

**4.** In support of their quest for summary relief, Strong creditors attach (1) their lawyer's affidavit; (2) an affidavit of judgment that was recorded in the Oklahoma County Clerk's office on 3 September 1998; (3) a garnishment summons recorded in the county clerk's office on 13 September 2002, which is neither certified by the federal court clerk nor indicates on its face the date of issuance in the federal-court case; (4) a page (which appears to have been generated by a computerized search of the county clerk records) indicating that the Association had filed an assessment lien on 10 May 2002; and (5) copies of two state statutes.

**5.** Local Court Rule 37(C) (Official Court Rules Of the Seventh Judicial Administrative District, comprised of Oklahoma and Canadian Counties) provides:
 C. All briefs shall be filed and a copy delivered to the assigned trial judge at least five (5) days prior to any hearings.
Strong creditors' answer brief was stricken by separate order entered on the day of the summary-judgment hearing. According to Strong

creditors' motion for new trial, the trial judge presented that order to counsel in the case before hearing summary-judgment motions.

**6.** For the pertinent terms of 12 O.S.Supp.1997 § 759(C), see *infra* note 17.

**7.** " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 926–27.

**8.** The focus in summary process is not on the facts which might be proven at trial, but rather on whether the tendered proof in the record reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n*, 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid Amer-*

from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[9] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary adjudication.[10]

¶9 Summary relief issues stand before us for *de novo* examination.[11] All facts and inferences must be viewed in the light most favorable to the non-movant.[12] Just as *nisi prius* courts are called upon to do, so also appellate tribunals bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.[13] Only if the court should conclude that there is no material fact in dispute and

the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor.[14]

### III

### THE BASIS FOR STRONG CREDITORS' CLAIM TO AN EFFECTIVE JUDGMENT LIEN

¶10 Strong creditors claim an enforceable judgment lien on the property, superior to the later-recorded liens of Hurst creditors and Association. According to *Strong creditors their lien has not expired because the statutory five-year dormancy period* [15] *runs from the date the judgment lien was created* (3 September 1998),[16] *not the date the*

---

*ica Preferred Ins. Co.*, 1989 OK 107, ¶8, n. 15, 777 P.2d 932, 936, n. 15.

9. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered by the parties in acceptable form. *Polymer, supra* note 8 at ¶8, at 113.

10. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶11, 909 P.2d 776, 781.

11. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081,1083 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

12. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053.

13. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

14. It is not the purpose of summary process to substitute a trial by affidavit for one by jury, but rather it is to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.*, 2003 OK 29, ¶14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly*, 1997 OK 24, ¶18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶15, 586 P.2d 726, 730.

15. The pertinent terms of 12 O.S.1991 § 735 (the so-called dormancy statute), *the statute in force when the judgment became enforceable in Oklahoma*, are:

If execution is not issued and filed as provided in Section 759 of this title or a garnishment summons is not issued by the court clerk within five (5) years after the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five (5) years has intervened between the date that the last execution on such judgment was filed or the date that the last garnishment summons was issued as provided by Section 759 of this title, ... such judgment shall become unenforceable and of no effect, and shall cease to operate as a lien on the real estate of the judgment debtor. Provided, that this section shall not apply to judgments against municipalities.

16. The terms of 12 O.S.2001 § 706(A) and (B) provide in pertinent part:

A. Scope. This section applies to all judgments of courts of record of this state, and judgments of courts of record of the United States not subject to the registration procedures of the Uniform Federal Lien Registration Act, Section 3401 et seq. of Title 68 of the Oklahoma Statutes, which award the payment of money, regardless of whether such judgments also include other orders or relief.
B. *Creation of Lien.* A judgment to which this section applies shall be a lien on the real estate of the judgment debtor within a county only from and *after a Statement of Judgment* made by the *judgment creditor or the judgment creditor's attorney*, substantially in the form prescribed by the Administrative Director of the Courts, *has been filed in the office of the county clerk in that county.*

*judgment was registered in Oklahoma* (21 August 1995). Strong creditors argue that their judgment was kept from lapsing into dormancy by the issuance of several garnishment summons by the federal court clerk within the initial five-year life of their judgment. On 13 September 2002 they filed one of the garnishment summons in the Oklahoma County Clerk's office. Strong creditors claim that each garnishment summons renewed and extended the life of the judgment by five years from the date of its issuance. They argue that judgment liens *are created* by filing a statement of judgment with the county clerk (§ 706(B)) and *are continued in force* in accordance with § 759(C) [17] by filing a general execution, renewal of judgment, or garnishment summons *within five years of the judgment lien's perfection* and then within five years after each filing of a general execution, renewal of judgment, or garnishment summons in the county clerk's office. Strong creditors base their view on a historical analysis of these statutes.[18] Because their judgment lien was filed 3 September 1998, they claim it was still effective when the trial court was called upon to determine the order of priority among competing liens.

¶ 11 Hurst creditors counter that Strong creditors' 1998 *lien expired on 21 August 2000, five years after their judgment was registered in the Western District of Oklahoma.* They argue that Strong creditors *have not succeeded in reviving their lien by recording an undated uncertified garnishment summons in the county clerk's office.* This is so, they assert, because once the lien expired, Strong creditors were required to file a new statement of judgment in the county clerk's office to extend the lien's efficacy in accordance with 12 O.S.2001 § 706.[19] According to Hurst creditors all judgments have an initial life of five years and the corresponding judgment lien that is perfected cannot exceed or outlive the life of the judgment which it secures. Even if we assume that Strong creditors' *judgment had retained its efficacy* by the issuance of successive garnishments, Hurst creditors argue that Strong creditors *did not succeed in keeping their judgment lien alive* because they failed to record in the county clerk's office (as required by § 759(C)) a *certified*

1. *Presentation of a Statement of Judgment and tender of the filing fee, shall, upon acceptance by the county clerk, constitute filing under this section.*
(emphasis added).

17. The pertinent terms of 12 O.S.Supp.1997 § 759(C) are:

C. To extend a judgment lien beyond the initial or any subsequent statutory period, prior to the expiration of such period, one of the following shall be filed and indexed in the same manner as judgments in the office of the county clerk in the county in which the statement of judgment was filed and the lien thereof is sought to be retained:
1. A certified copy of a general execution upon the judgment;
2. A certified copy of a notice of renewal of judgment; or
3. A certified copy of a garnishment summons issued against the judgment debtor.
The judgment creditors' right to a lien cannot be changed after the lien is perfected. We cite here to the 1997 version of § 759(C) because that version was in effect when the Hurst and Strong creditors' liens stood perfected in 1998 and 1999.

18. According to Strong creditors, between 1988 and 1997 the filing date for a judgment lien was triggered by the date that the execution was filed

and/or the date that garnishment summons was issued and filed in the county clerk's office. The judgment lien could only be continued in force by filing an execution in the county clerk's office or issuing a garnishment summons by the court clerk. If a garnishment summons was issued by the court clerk in the county where the judgment was entered, it must have been consecutively filed in the county where the lien is sought to be preserved. 12 O.S.1991 § 759(C). According to Strong creditors, that portion of § 759(C) which refers to extending a judgment lien beyond the initial or "any subsequent statutory period, prior to the expiration of such period ..." did not present an issue as to when the statutory period began to run. This was so because the only way to continue a judgment lien was to file an execution in the county clerk's office. They reason that the later § 706(B) requirement (of filing of a statement of judgment in the county clerk's office) replaced the necessity of filing an execution in the county clerk's office yet the time line for filing did not change. From this Strong creditors conclude that the statutory period runs from the date of the judgment lien's perfection (through filing a statement of judgment in the county clerk's office).

19. For the pertinent terms of 12 O.S.2001 § 706, see *supra* note 16.

*copy* of one of the three types of processes/execution. *In other words, the life of a judgment lien is only as long as that of the judgment it secures.* According to Hurst creditors, Strong creditors' construction of §§ 706, 735 and 759(C) violates these fundamental premises. *We agree.*

## IV

## THE EFFECT OF THE DORMANCY STATUTE UPON THE CONTINUED EFFICACY OF A JUDGMENT LIEN

¶ 12 Strong creditors assert that this case presents a first-impression question whether the § 759(C) five-year dormancy period for a judgment lien begins to run upon the lien's perfection or upon the judgment's entry (or registration). The tendered issue requires an analysis of the state dormancy statute's impact upon a registered federal-court judgment and upon the judgment lien which secures that obligation.

**20.** An out-of-district federal judgment (or sister-state judgment) may be registered in Oklahoma by filing in the office of the court clerk of any county in this state a copy of the foreign judgment that has been authenticated in accordance with the applicable congressional act or state statute. 12 O.S.2001 § 721 (Uniform Enforcement of Foreign Judgments Act, 12 O.S.2001 § 719 *et seq.*) A foreign judgment is "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." 12 O.S.2001 § 720.

**21.** Federal law requires the filing of a certified copy of the judgment in the district of the registering federal district court clerk, who will enter it on the records in substantially the same manner as if it had been rendered by the registering court. *Arenas v. Sternecker*, 109 F.Supp. 1, 2 (D.C.Kan.1953). "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." § 1963. Registration is permitted when the judgment has become final by appeal's termination or expiration of the time for appeal, or when ordered to be so deemed by the court *for good cause shown. Id.; Associated Business Tel. Sys. v. Greater Capital*, 128 F.R.D. 63, 68 (D.N.J.1989). The provisions of 28 U.S.C. § 1738 state the federally-mandated procedure for judgment authentication. Its terms provide that the judicial proceedings of any court of any U.S. state, territory, or possession "shall be proved or admitted in other courts within the United States ... by attestation of the clerk and

### A.

### The Registration of An Out–Of–District Federal Judgment Is a Prerequisite For Securing a Judgment Lien

¶ 13 An out-of-district federal-court judgment may be *registered* either in the state [20] or in federal district court [21] as a prerequisite for its enforcement in Oklahoma. *Its vitality begins with the registration process,*[22] *which* confers on the obligee the status, rights and remedies afforded by state law to any judgment creditor. *We accord a federal-court judgment the very same effect as that which we must give to a sister-state judgment under the full-faith-and-credit command of the U.S. Constitution.*[23]

### B.

### Dormancy's Impact On A Registered Federal Judgment

¶ 14 A non-Oklahoma (*namely, sister-state, foreign-nation and federal-court*) judgment that is enforceable at the time of its registration [24] in Oklahoma is to

seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form."

**22.** The term "registered" denotes those foreign judgments which are filed in accordance with the procedures of 28 U.S.C. § 1963 or the Uniform Enforcement of Foreign Judgments Act. "Domesticated" refers to the antecedent common-law procedure for bringing an action upon the foreign judgment and securing its domestic counterpart.

**23.** *Veiser v. Armstrong*, 1984 OK 61, ¶ 7, n. 5, 688 P.2d 796, 799, n. 5 ("When a federal-court judgment is attacked collaterally in a state court, it is entitled to the same faith and credit as that given to it under the applicable federal law."); *Salazar v. City of Oklahoma City*, 1999 OK 20, ¶ 12, 976 P.2d 1056, 1061; *Oklahoma Bar Ass'n v. Patterson*, 2001 OK 51, ¶ 6 n. 8, 28 P.3d 551, 555–56 n. 8.

The terms of 12 O.S.2001 § 712 provide in pertinent part that "[t]he foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit". *Drllevich v. Stock*, 1998 OK 39, ¶ 23, 958 P.2d 1277, 1282. See also the Uniform Foreign Money Judgments Recognition Act, 12 O.S.2001 § 712.

**24.** Uniform Enforcement of Foreign Judgments Act, 12 O.S.2001 § 719 *et seq.* Non–Oklahoma judgments are subject to attack for inefficacy at

be considered a new judgment[25] for purposes of the five-year dormancy statute. 12 O.S.1991 § 735.[26] The dormancy period begins to run from the *date of registration.*[27] A judgment will become dormant and ineffective unless within five years from its registration (a) execution *is issued* upon it by the court clerk *and filed* in the county clerk's office as provided by § 759,[28] (b) a notice of renewal is filed in the court clerk's office or (c) garnishment is issued by the court clerk.[29]

¶ 15 It is uniformly the registrant (the judgment creditor) who bears the burden of proof and persuasion **to show the continued efficacy of its non-Oklahoma judgment** that has been registered in the state for enforcement as a domestic judgment.[30]

### C.

### *The Mechanics of Securing a Judgment Lien*

¶ 16 A domestic (or registered) judgment is perfected as a judgment lien (operable against the real property of the judgment debtor) by filing a "statement of judgment" in the county clerk's office. 12 O.S.2001 § 706.[31] *The judgment constitutes the obli-*

*gation,* which is secured by the lien that is impressed on the debtor's real property. The lien is created by operation of statute.[32] It attaches to the property when the statutory requirements have been met.[33]

¶ 17 A judgment lien *retains* its efficacy when prior to the expiration of the initial or "subsequent statutory period," a certified copy of one of the following documents is filed and indexed in the county clerk's office: (a) a general execution issued upon the judgment, (b) a filed notice of renewal of judgment or (c) an issued garnishment summons. 12 O.S.Supp.1997 § 759(C).[34]

### D.

### *Dormancy's Impact on Judgment Liens*

¶ 18 When an out-of-state judgment is perfected as a lien, its enforceability continues from the point in time that coincides with its registration. The life of a domestic judgment and that judgment's lien run parallel and concurrently from the point of entry. *A judgment lien's continued life is measured by the period that applies to enforceability of judgments. When the obligation that lien secures is extinguished,*

the time they are registered for enforcement in Oklahoma. Before the judgment is deemed enforceable and the five-year dormancy period begins to run, all challenges must be resolved in favor of the registrant. 12 O.S.2001 § 721

**25.** *Drllevich, supra* note 23, at ¶ 20, at 1281 (a Washington judgment, enforceable at the time of its registration in Oklahoma under the Uniform Enforcement of Foreign Judgments Act, *supra* note 24, was deemed a new Oklahoma judgment subject to the statutory dormancy period which begins to run from the date of registration).

**26.** For the terms of 12 O.S.1991 § 735, the so-called "dormancy statute," see *supra* note 15.

**27.** *Drllevich, supra* note 23, at ¶ 23, at 1282. Federal-court judgments are subject to the same dormancy rule that applies to registered sister-state judgments, foreign judgments as well as out-of-county Oklahoma judgments. We cannot encumber federal-court judgments with barnacles that out-of-state judgments do not have to bear.

**28.** The terms of 12 O.S.Supp.1997 § 759(A) provide that when a general execution is issued and placed in the custody of a sheriff for levy, a

certified copy of the execution shall be filed in the office of the county clerk whose sheriff holds the execution and shall be indexed the same as judgments.

**29.** See the provisions of 12 O.S.1991 § 735, *supra* note 15.

**30.** *Fidelity & Deposit Co. of Md. v. De Graw,* 1947 OK 94, ¶ 7, 178 P.2d 885, 886.

**31.** For the pertinent terms of 12 O.S.2001 § 706, see *supra* note 16.

**32.** *Id.*

**33.** At early common law there was no lien on real estate. A creditor had no remedy against his debtor's land. Judgment liens are dependent for their existence on strict adherence to the state statutory procedures. *Chandler–Frates & Reitz v. Kostich,* 1981 OK 74, ¶ 8, 630 P.2d 1287, 1290; *State v. Sterling,* 1947 OK 108, ¶ 5, 179 P.2d 125, 127, 198 Okl. 398.

**34.** For the terms of 12 O.S.Supp.1997 § 759(C), *supra* note 17.

*the lien itself ceases to operate.*[35] *The dormancy act affects solely executions on judgments. Judgment liens are subject to dormancy only because of its negative impact upon the judgment's enforceability. A judgment lien retains its efficacy* by the filing of a *certified copy* of an execution or a garnishment summons in all counties where the statement of judgment has been filed.[36]

¶ 19 In short, there is no such thing as dormancy of a judgment lien. The five-year dormancy period for judgments begins with a judgment's entry (or registration) and expires five years from that date. *When the judgment loses its efficacy, the lien itself ceases to operate for want of an obligation which it secures.*[37] The lien expires because it cannot survive the point of time beyond which a judgment ceases to be enforceable.[38]

## V

## THE ORDER OF PRIORITIES FOR THE LIENS IN CONTROVERSY

¶ 20 The parties to this appeal concede the mortgage lender's lien commands the highest priority status. The efficacy of that lien is not in issue here. Tendered for this court's resolution is the priority among the remaining judgment liens. The key lien contest is waged between the Strong and Hurst creditors. Association adopts the position advanced by Hurst creditors.

### A.

### *Strong Creditors Failed to Meet Their Burden of Proof*

¶ 21 Strong creditors' federal-court judgment (registered on 21 August 1995) and the judgment lien which secures that obligation (perfected on 3 September 1998) ran concurrently from their separate points of entry. *The period for measuring the enforceability of their judgment also applies to assess the judgment lien's continued life.*

¶ 22 It was Strong creditors' burden to prove (a) the *continued efficacy of their non-Oklahoma judgment* by showing that it had not become dormant for want of issuance of process or garnishment since its registration in August 1995 and (b) *that the judgment lien which secures that obligation had retained its efficacy by creditors' compliance with the statutory filing requirements.* The other lien creditors bore no more than the burden of proving the efficacy status of their own judgments (and judgment liens).

¶ 23 As a general rule, acceptable probative substitutes may be used as evidentiary materials in the summary process of adjudication to eliminate from the adversary contest any disputed fact issues.[39] The evidentiary materials required to show the present efficacy of the judgment lien are not controlled by Rule 13's [40] evidentiary substitutes in summary process. To show the judgment lien's present effectiveness Strong creditors must tender documentation that meets the standards of § 759(C.) [41] That doc-

---

**35.** The lien expires by operation of the common-law rule that the lien ceases to operate when the obligation it secures is extinguished. *See* (1) *Riverside Nat. Bank v. Manolakis,* 1980 OK 72, ¶ 9, 613 P.2d 438, 440–41 (when the underlying obligation for which security is given ceases to exist, a lien upon the security is automatically discharged; the lien cannot survive the life of the obligation it secured); (2) *Fourth Nat'l Bank of Tulsa v. Appleby,* 1993 OK 153, ¶ 26, 864 P.2d 827, 834 (the bar of limitations on a debt serves to extinguish any lien securing the debt);(3) *Anderson v. Barr,* 1936 OK 471, ¶ 25, 62 P.2d 1242, 1246, 178 Okl. 508 (a mortgage lien is extinguished by a sale); (4) 42 O.S.2001 § 22 ("The sale of any property on which there is a lien . . . in satisfaction of the claim secured thereby . . . extinguishes the lien thereon.").

**36.** *Id.*

**37.** *See supra* note 35.

**38.** *Id.*

**39.** *Jackson, supra* note 7, at ¶ 15 n. 35, at 773 n. 35.

**40.** Rule 13, Rules for District Courts of Oklahoma, 12 O.S.Supp.2002, Ch. 2, App.

**41.** For the pertinent terms of 12 O.S.Supp.1997 § 759(C), see *supra* note 17. Certification is not only a requirement of § 759(C), but also of the general recording statute for the county clerk's office. The pertinent terms of 19 O.S.2001 § 298(B) provide that "[a]ll documents filed of record in the office of the county clerk pursuant to subsection A of this section *or pursuant to any other law shall be* an original or *a certified copy of an original document.*" (emphasis added).

umentation must (a) *bear the federal court clerk's certificate* which identifies the document as a true and correct copy of the original on file in the clerk's office [42] as well as (b) *be filed in the* Oklahoma County Clerk's office before the dormancy period has run on the registered federal-court judgment.[43]

¶ 24 Attached to Strong creditors' motion for summary judgment is a garnishment summons represented as having been issued in the federal-court case. The summons, which bears a notation that it was recorded in the Oklahoma County Clerk's office on 13 September 2002, *neither reflects the date of its issuance nor bears a certificate that it is a true and correct copy of the document* in the custody of the federal court clerk.[44] Without the court clerk's certificate the tendered document fails to meet the § 759(C) standard for keeping the judgment lien alive.[45] Moreover, in the form submitted, the garnishment summons does not meet the general evidence law's requirement for certification when there is reliance on a docu-

ment from another court.[46] In sum, absent the required certification we cannot recognize the garnishment summons attached to Strong creditors' motion for summary judgment as a legitimate or acceptable Rule 13 probative substitute.

¶ 25 Because Strong creditors' failed to show that they had filed in the county clerk's office a *certified copy* of the garnishment summons timely issued by the federal court clerk, the trial court correctly concluded that their judgment lien was no longer efficacious.

### B.

### *The Hurst Creditors' and Association's Liens*

¶ 26 The efficacy status of Hurst creditors' and Association's liens is not in dispute. *The trial court concluded that Hurst creditors' lien was second in priority and the Association's had a third lien on the property.*

**42.** *Wilson v. Crutcher*, 1936 OK 338, 176 Okla. 481, 56 P.2d 416, § 7, (the court held that the federal court clerk's certificate attesting that the copy of a judgment is a full, true, and correct copy of the original on file is a sufficient authentication for the document's admissibility); *Carter v. Barry*, 1932 OK 7, 154 Okla. 145, 7 P.2d 448, §§ 27–31, 154 Okla. 145, 7 P.2d 448.

**43.** See the pertinent terms of 12 O.S.Supp.1997 § 759(C), *supra* note 17.

**44.** The federal court follows the state procedure for garnishment process. The affidavit is the document that triggers a garnishment process. Upon the filing of garnishment affidavit, the federal court clerk issues garnishment summons. The garnishment summons is filed as an attachment to the return of service. Strong creditors' tender of an uncertified and unstamped garnishment summons without a certificate by the federal court clerk is not an acceptable probative substitute under Rule 13, Rules for District Courts of Oklahoma, 12 O.S.Supp.2002, Ch. 2, App.

**45.** For the pertinent terms of 12 O.S.Supp.1997 § 759(C), see *supra* note 17.

**46.** *See* 12 O.S.2001 §§ 2901, 2902, 3005 of the Oklahoma Evidence Code. Section 2901(A) states the general rule that authenticity is not assumed. Section 2901(B) delineates the various methods of authentication conforming to the general requirement of § 2901(A). One example in § 2901(B)(7) is "evidence that a writing autho-

rized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement or data compilation in any form, is from the public office where items of this nature are kept."

Section 2902 lists the circumstances in which extrinsic evidence of authenticity as a condition precedent to admissibility is not required. Although that section does not specifically address authentication of judicial records, its provisions *make certain classes of documents self-authenticating* (such as domestic public documents, certified copies of public records, and officially published documents) to which judicial records generally belong. Included among those are: (a) *§ 2902(1)*—"[a] document bearing a seal purporting to be that of the U.S. or of any state ... or of a political subdivision, department, office or agency thereof, and a signature purporting to be an attestation or execution"; (b) *§ 2902(2)*—even if there is no seal, a document purporting to bear the signature of an officer in an official capacity of any entity described in subsection 1 is sufficient if "a public officer having a seal and having official duties ... certifies under seal that the signer has the official capacity and the signature is genuine"; and (c) *§ 2902(4)*—"a copy of an official record ... or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office ... certified as correct ... by [a] person authorized to make the certification ...". According to § 3005, a copy *"certified as correct in accordance with section 2902"* may prove the contents of an official record.

## VI

## STRONG'S QUEST FOR NEW TRIAL

¶ 27 Strong creditors' quest for new trial urged the court either (a) to modify its summary judgment to include certain conclusions of law and other declarations establishing undisputed facts from which but a single inference may be drawn in favor of the moving party or (b) to grant a new trial for the purpose of admitting the evidentiary material that was stricken at nisi prius. They urge on appeal that the trial court erred in denying their motion and in failing to make the requested conclusions and declarations.

### A.

### *The Trial Court's Failure to Make Certain Conclusions of Law and Declarations*

¶ 28 Strong creditors claim that the trial court erred in failing to make a conclusion of law or declaration of undisputed fact (from which but a single inference may be drawn in favor of the moving party) that their registered federal-court judgment from Missouri

is valid as a matter of law. They reason that if the court determined that the validity of their lien presents a question of law, it must have concluded that the evidentiary materials attached to their motion for summary judgment were acceptable. According to Strong creditors, all factual allegations must be assumed admitted in accordance with *Rule 13(b)* and *(e)*, *Rules for District Courts.*[47] They argue that the trial court should hence amend its summary judgment to include the requested conclusion (or declaration) that the judgment is valid as a matter of law for the purpose of making a final disposition of all the parties' motions for summary judgment.

■■■ ¶ 29 When entering summary judgment, the trial court is not required to recite *sua sponte* in the journal entry any of the material facts that are undisputed.[48] There is no showing in the record that Strong creditors made a timely pre-judgment request for the conclusions of law and declarations of undisputed fact which they sought in their new trial motion.[49] They cannot hence complain of these omissions.[50]

---

47. The pertinent terms of Rule 13(b) and (e), Rules for District Courts of Oklahoma, 12 O.S.Supp.2002, Ch. 2, App., are:

b. All material facts set forth in the statement of the movant *which are supported by acceptable evidentiary material **shall be deemed admitted** for the purpose of summary judgment or summary disposition* unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material. If the motion for summary judgment or summary disposition is granted, **the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.**

\* \* \*

e. If it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment for said party.
If the court **finds** that there is no substantial controversy as to certain facts or issues, the *court may enter an order specifying the facts or issues which are not in controversy* and direct that the action proceed for a determination of the remaining fact or issues. An order denying either summary judgment or summary disposition is interlocutory and is not reviewable on appeal prior to final judgment.
(emphasis added).

48. *MBA Commercial Const., Inc. v. Roy J. Hannaford Co., Inc.*, 1991 OK 87, ¶ 8 n. 3, 818 P.2d 469, 472 n. 3.

49. When a timely prejudgment request is made for a conclusion of law, the trial court would be duty-bound to make written conclusions of law and declarations establishing undisputed facts from which but a single inference may be drawn in favor of the moving party. *Messinger v. Messinger*, 1958 OK 296, ¶ 0, 341 P.2d 601, 602; *Davis v. Gwaltney*, 1955 OK 362, ¶ 11, 291 P.2d 820, 824. The terms of 12 O.S.2001 § 611 provide:

Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state, in writing, the findings of fact found, separately from the conclusions of law.
(emphasis added).

50. The record reveals only that in post-judgment stages to settle journal entry, Strong creditors requested opposing counsel to include certain conclusions of law and declarations of undisputed fact in the proposed journal entry for submission to the trial court. Failing to agree on the text, the parties jointly submitted the controversy to the trial court.

¶ 30 Absent a record to the contrary, we are duty-bound to indulge in a presumption of correctness that attaches by force of law to the trial court's rulings.[51] They are presumptively deemed to include a finding of every fact necessary to support them.[52] Strong creditors have not met their burden to provide for our review a record that would overcome the nisi prius presumption of correctness.

¶ 31 Moreover, what Strong creditors desire is a nisi prius conclusion of law that their Missouri judgment is an enforceable obligation. Even if they had timely requested the sought conclusion, they could not be deemed harmed or aggrieved by the trial court's failure to make it. This is so because in a summary judgment review an appellate court has the same power as the trial court to resolve any disputed issues of law.

## B.

### Error in Not Allowing Strong Creditors Additional Time to Respond to Hurst's Motion For Summary Judgment

¶ 32 Strong creditors argue that they should have been given 15 days to respond to Hurst creditors' motion for summary judgment pursuant to *Rule 4(e), Rules for District Courts.*[53] They claim that *Rule*

*4(c)*[54] allows counsel to submit a verified statement of what the proof will show until a hearing or stipulation can be provided. Strong creditors urge that the evidentiary material attached to their motion for summary judgment contains a sufficient recital of fact, including their counsel's verified statement of what the proof would show. Because the tendered evidentiary material is of record in Oklahoma County, Strong creditors argue that the trial court should take judicial notice of it.[55]

¶ 33 Strong creditors' reliance on Rule 4 is misplaced. Summary process is governed by Rule 13.[56] Review in this case must be strictly confined to the content of the nisi prius summary-process record. Judicial notice will not be taken of any document the trial judge did not have before him when the case was submitted for summary relief.[57]

## C.

### The Exclusion of Strong Creditors' Evidentiary Material

¶ 34 Strong creditors argue that the trial court erred in *striking* their answer (to Hurst creditors' motion for summary judgment) as well as in *excluding* from the record the attached evidentiary materials.[58] In

51. *KMC Leasing Inc. v. Rockwell Standard Corp.*, 2000 OK 51, ¶ 12, 9 P.3d 683, 688–89; *Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks*, 1994 OK 9, ¶ 15 n. 24, 870 P.2d 762, 768 n. 24.

52. *Id.*

53. The pertinent terms of Rule 4(e), Rules for District Courts of Oklahoma, 12 O.S.Supp.2002, Ch. 2, App., provide:

> e. Any party opposing a motion, except those enumerated in Section c above, shall serve and file a brief or a list of authorities in opposition within fifteen (15) days after service of the motion, or the motion may be deemed confessed.

54. The pertinent terms of Rule 4(c), Rules for District Courts of Oklahoma, 12 O.S.Supp.2002, Ch. 2, App., provide:

> c. Motions raising fact issues shall be verified by a person having knowledge of the facts, if possible; otherwise, a verified statement by counsel of what the proof will show will suffice

> until a hearing or stipulation can be provided. * * *

55. For this notion Strong creditors cite 12 O.S. 2001 § 2202, which provides in pertinent part:

> A. This section governs only judicial notice of adjudicative facts.
> * * *
> C. A court may take judicial notice, whether requested or not.
> D. A court shall take judicial notice if requested by a party and supplied with the necessary information.

56. Rule 13, Rules for District Courts of Oklahoma, 12 O.S.2001, Ch. 2, App.

57. *Manley v. Brown*, 1999 OK 79, ¶ 30, 989 P.2d 448, 457–58; *Frey v. Independence Fire and Cas. Co.*, 1985 OK 25, ¶ 6, 698 P.2d 17, 20.

58. Among the evidentiary materials excluded from the record are Strong creditors' affidavit, several uncertified garnishment summons and

their new trial motion they not only attempt to incorporate by reference the excluded materials, but also attach to their motion one of the documents, *their own affidavit.* Strong creditors claimed that the excluded materials were necessary to present a complete record on appeal.

¶ 35 Although the trial judge rejected Strong creditors' renewed quest to place the materials in the record, the summary judgment indicates that he did take cognizance of one item—the Missouri federal-court judgment.[59] That judicial record had been certified by the court clerk of the Missouri federal court (as well as by the court clerk of the Oklahoma federal court as having been registered in that court). We likewise take cognizance of its existence.

 ¶ 36 Even if the trial court had recognized all the excluded documents and rescinded his exclusionary ruling, the order declaring priority could not be altered on appeal. *There is simply nothing in the excluded documents that would inject efficacy into Strong creditors' claim to an efficacious lien.*

¶ 37 Strong creditors' affidavit deals with the present efficacy of the judgment lien. Their affidavit (or that by their counsel) cannot be substituted for the best evidence—a certificate of the federal court clerk placed upon the required statutory document.

### D.

### *The Strong Creditors' post-judgment Attempt to Revive Their Judgment Lien*

 ¶ 38 Strong creditors attached to their new trial motion two new documents that had been executed and filed in the Okla-

homa County Clerk's office on 25 November 2002, three days after the hearing on summary judgment—a certified copy of the notice of renewal of judgment and an affidavit of judgment. They urged the court to amend its summary judgment to include a declaration of undisputed fact that their judgment lien was reinstated on November 25. According to Strong creditors, a new trial or modification is authorized by 12 O.S. 2001 §§ 651(7), 1031(7).[60] The trial court *ruled* that their belated attempt to file the new documents does not constitute newly discovered evidence warranting new trial or modification of summary judgment.

¶ 39 We agree. Strong creditors' post-judgment attempt to revive their judgment lien comes too late for consideration in this litigation. A determination of their November 25 judgment lien's efficacy and its priority status *vis-a-vis* other lien claimants must await another day.

### VII

### SUMMARY

¶ 40 An out-of-district federal-court judgment registered in a federal court sitting in Oklahoma is accorded the same effect as that given to sister-state and foreign-nation judgments. At the time of its local registration, a federal-court judgment is deemed enforceable and subject to the five-year statutory dormancy period. When a judgment is perfected as a lien, its enforceability continues from the point in time that extends from its registration. A judgment lien retains its efficacy when prior to the expiration of the initial five-year period (or expiration of the subsequent statutory period) a certified copy of a general execution, garnishment sum-

---

garnishment affidavits, and a certified copy of the Missouri federal-court judgment.

**59.** *See* Part I, ¶ 6, *supra.*

**60.** The terms of 12 O.S.2001 § 1031(7) are:

The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter: * * *7. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending;

The terms of 12 O.S.2001 § 651(7) are:

A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party: * * *
7. Newly discovered evidence, material for the party applying, which could not, with reasonable diligence, have been discovered and produced at the trial;

mons or notice of renewal is filed in the county clerk's office. *Once a judgment becomes dormant, its judgment lien ceases to operate by extinction of the obligation which it secures.*

¶ 41 Strong claimants failed to meet their burden of proving the continued efficacy of their judgment lien by documentation which bears *a certificate by the federal court clerk with custody of the documents that they constitute a true and correct copy of the original on file.* The judgment lien's efficacy is not governed by the standards for evidentiary substitutes acceptable in summary process, but rather by the documentation required by the provisions of 12 O.S.Supp.1997 § 759. An affidavit of the parties (or their counsel) cannot be substituted for the critical statutory documents.

¶ 42 We hold that, on this record, the nisi prius order of priority among competing liens is correct.

¶ 43 THE TRIAL COURT'S SUMMARY DISPOSITION IS AFFIRMED.

¶ 44 WATT, C.J., and LAVENDER, HARGRAVE, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

¶ 45 HODGES and KAUGER, JJ., concur in result.