2004 OK CIV APP 47

**EQUIPMENT WORLD, INC.,**
**Plaintiff/Appellee,**

v.

**INTERNATIONAL FIDELITY**
**INSURANCE COMPANY,**
**Defendant/Appellant,**

**and**

**Oklahoma Excavation, Inc., Defendant.**

**No. 100,054.**

Court of Civil Appeals of Oklahoma,
Division No. 4.

April 13, 2004.

Charles Greenough, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, for Plaintiff/Appellee.

Mary Robertson, Christopher R. Graves, Crowe & Dunlevy, Norman, OK, and Kayci B. Hughes, Crowe & Dunlevy, Tulsa, OK, for Defendant/Appellant.

Opinion by RONALD J. STUBBLEFIELD, Judge:

¶ 1 This is an appeal by the surety on a "Statutory and Payment Bond" from summary judgment entered by the District Court of Tulsa County in favor of an equipment leasing company. The appeal has been assigned to the accelerated docket pursuant to Okla. Sup.Ct. R. 1.36, 12 O.S.2001, ch. 15,

app. 1. Based on our review of the record on appeal and applicable law, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This lawsuit arises from two separate road construction projects in Tulsa County in which the Oklahoma Transportation Authority contracted with the company Oklahoma Excavation, Inc. (OEI or the contractor). The contractor leased equipment from Equipment World, Inc. (EWI), and that equipment was used on the state projects. However, OEI did not pay all its indebtedness to EWI, and eventually OEI was terminated from the projects. EWI removed its equipment from the job and sought payment from the surety on the statutory performance bond, International Fidelity Insurance Company (Fidelity). Fidelity did not dispute that the equipment had been used on the state road projects and paid EWI for rental fees for the time the equipment was used. However, Fidelity disputed its obligation to pay EWI for post-return repairs on the equipment and for interest accruing on the unpaid balances according to the terms of the contract between EWI and OEI.

¶ 3 EWI filed this lawsuit, and largely the dispute is a legal one—whether post-return repairs and contractual interest are covered under the statutory bond posted pursuant to 61 O.S.2001 § 1. We conclude they are.

## STANDARD OF REVIEW

¶ 4 The appellate standard of review of a trial court's grant of summary judgment is de novo. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, this Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. Id. All inferences and conclusions to be drawn from the evidentiary materials will be viewed in the light most favorable to the non-moving party. Id. This Court will reverse the grant of summary judgment where it appears from the evidentiary materials that there is a genuine issue as to any material fact or, if the material facts are undisputed, reasonable persons might reach different inferences on conclusions from those facts. Buck's Sporting Goods, Inc. v.

*First Nat'l Bank & Trust Co. of Tulsa,* 1994 OK 14, ¶ 11, 868 P.2d 693, 697–98. In a summary judgment review an appellate court has the same power as the trial court to resolve any disputed issues of law. *U.S. Mortg. v. Laubach,* 2003 OK 67, ¶ 31, 73 P.3d 887, 900.

## DISCUSSION OF ISSUES

¶ 5 Fidelity raises several contentions of error on appeal which are posed as questions. These propositions may be summarized as contentions that the Trial Court erred in granting summary judgment to EWI because (1) under 61 O.S.2001 § 1, a performance bond surety is not liable for the post-return repair of leased equipment which is no longer being used on a state project, nor for interest on the debt specified in the lease contracts; (2) the surety is not liable for repairs "in excess of normal wear and tear" or "tort damages" to leased equipment no longer being used for completion of the bonded project; and, (3) the equipment lessor (EWI) should be required to recover the cost of "extraordinary repairs" under liability and property insurance it was required to obtain on a state project. We reject these contentions.

### I.   Costs of Repair and Interest

¶ 6 61 O.S.2001 § 1 (emphasis added) provides:

**Bond, irrevocable letter of credit or affidavit of payment of indebtedness to be furnished on public works contracts**

A.   Prior to an award of a contract exceeding Twenty-five Thousand Dollars ($25,000.00) for construction or repair of a public building or structure, or improvement to real property, the person that receives the award shall:

1.   Furnish a bond with good and sufficient sureties payable to the state in a sum not less than the total sum of the contract; or

2.   Cause an irrevocable letter of credit, containing terms the Department of Central Services prescribes, to be issued for the benefit of the state by a financial institution insured by the Federal Deposit In-

surance Corporation in a sum not less than the total sum of the contract.

B.   *The bond* or irrevocable letter of credit shall ensure the proper and prompt completion of the work in accordance with the contract and *shall ensure that the contractor shall pay all indebtedness the contractor incurs for the contractor's subcontractors and all suppliers of labor, material, rental of machinery or equipment, and repair of and parts for equipment the contract requires the contractor to furnish.*

C.   For a contract not exceeding Twenty-five Thousand Dollars ($25,000.00), in lieu of a bond or irrevocable letter of credit, the contractor shall submit an affidavit of the payment of all indebtedness incurred by the contractor, the contractor's subcontractors, and all suppliers of labor, material, rented machinery or equipment, and repair of and parts for equipment used or consumed in the performance of the contract. The execution of the affidavit with knowledge that any of the contents of the affidavit are false, upon conviction, shall constitute perjury, punishable as provided for by law.

Fidelity acknowledges it is responsible to EWI for "repair of and parts for equipment used or consumed in the performance of the contract," but argues that this language means only that it is liable for cost of repair of the machinery while it was being used on the state project. It claims that when the machinery was returned to EWI with no intent that the equipment ever be used on the job again, it had no further liability for repair costs. We find this to be a strained construction of the statutory language, and more specifically one that overlooks the most descriptive phrase in the statute in regard to legislative intent.

¶ 7 In defining the scope of the surety's liability, the Oklahoma Legislature chose to use the phrase "all indebtedness the contractor incurs," rather than more specific terms such as charges or rents. The use of such a broad term as "all indebtedness" indicates a legislative intent to give considerable protection to subcontractors and suppliers of materials and equipment for construction of state

projects. This is in keeping with the basic purpose of the law noted by the Oklahoma Supreme Court in *Richards & Conover Steel Co. v. Nielsons, Inc.,* 1988 OK 48, ¶ 14, 755 P.2d 644, 649, "to as fully indemnify against loss those who deal with public improvement contractors as those who deal with other contractors with private persons are indemnified by the provisions of the mechanic's and materialmen's lien laws." We shall review the claim of EWI against the surety in that light.

¶ 8 Under section 12 of the lease agreements, OEI clearly had a contractual responsibility to keep the rented equipment in a good state of repair. Therefore, EWI was entitled to the return of its leased equipment in good and workable condition. When the returned equipment was found to be damaged, EWI was entitled under sections 12 and 14 of the contracts to undertake repairs for which OEI and the performance bond surety were responsible. The important fact is that the equipment's need for repair was due to use by OEI on the state projects, as attested to by the president of OEI and not controverted by Fidelity. If the equipment was damaged while working on the state projects, it is of no significance that the machinery was not scheduled to return to those projects.

¶ 9 Fidelity also claims it should not be responsible for the interest on the delinquent debt, which the lease contracts specified at a rate of 18 percent. Fidelity argues that it "cannot be deemed to have assumed, by its bonds, any contract to which it is not a party." We believe the Oklahoma Legislature has specified otherwise. Under 61 O.S. 2001 § 1, Fidelity's responsibility is for "all indebtedness the contractor incurs." Clearly that would include interest specified in the lease contracts for delinquent accounts. Fidelity alternatively claims that the proper interest should be the statutory rate. However, neither the Oklahoma Legislature nor the courts of this state may wrongfully impair legal contracts. Okla. Const. art. 2, § 15. Thus, the statute regarding interest on judgments clearly specifies "[i]f a rate of interest is specified in a contract, the rate specified shall apply and be stated in the

journal entry of judgment." 12 O.S.2001 § 727(D). The rate specified by the contracts between EWI and OEI was correctly stated in the judgment of the Trial Court.

## II. Nature of the Repairs and Collateral Source

¶ 10 Fidelity claims it was not responsible for damages to the equipment which were "in excess of normal wear and tear" or for "extraordinary repairs." However, the evidentiary materials do not bear out this attempted characterization of the repairs. Once again the affidavit of the OEI executive officer is dispositive of the issue. He states that the damage done to the EWI equipment was incurred entirely by performing work under the state contracts. Fidelity did not controvert this evidence. Thus, there simply is no evidentiary basis for Fidelity's attempt at categorizing the repairs effected by EWI as extraordinary, unusual, or necessitated by tort injury to the equipment.

¶ 11 The last conclusion is also dispositive of Fidelity's question whether EWI could recover from the performance bond for "extraordinary repairs which should be covered by and compensated for by the liability and property insurance required to be obtained by OEI and [EWI]." The short answer is that EWI can recover under the surety bond, because there was no indication that there were "extraordinary repairs" or "tort damages." The evidence establishes that the need for repairs was due to the work performed on the state projects, and not from occurrences that would be covered by liability and/or property insurance.

¶ 12 We reiterate that the cost of repairs was part of the "indebtedness [contractually] incurred by the contractor." Thus, by statute they were costs for which the contractor's surety was contractually liable. The existence of an alternative or collateral source for possible payment of the expense would neither extinguish the contractor's debt nor the equipment lessor's right to recover on the performance bond.

## CONCLUSION

¶ 13 We find no error in the Trial Court's grant of summary judgment. The cost of

repairs and the contractually specified interest on unpaid charges were "indebtedness the contractor incurs." Thus, to deny recovery against the performance bond for those charges would violate the clear mandate of the legislature in 61 O.S.2001 § 1(B). Accordingly, the judgment of the lower court is affirmed.

¶ 14 AFFIRMED.

TAYLOR, P.J., and GOODMAN, J., concur.