2002 OK CIV APP 32

**SAMSON RESOURCES COMPANY, Plaintiff/Appellee,**

and

**Charles Schusterman Enterprises and Samson Properties, Inc., Plaintiffs,**

v.

**AMERADA HESS CORPORATION and DLB Oil & Gas, Inc. (now Chesapeake Exploration Limited Partnership), Defendant/Appellants.**

No. 96,762.

Court of Civil Appeals of Oklahoma, Division No. 3.

Decided Dec. 6, 2001.

Certiorari Denied Feb. 26, 2002.

Michael E. Smith, Sharon Taylor Thomas, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, OK, For Plaintiff/Appellee.

Robert P. Costello, Oklahoma City, OK, For Defendant/Appellant, Chesapeake Expl.

Mark D. Christiansen, Crowe & Dunlevy, Oklahoma City, OK, For Defendant/Appellant, Amerada Hess Corp.

Opinion by CAROL M. HANSEN, Chief Judge:

¶ 1 Defendant/Appellants, Amerada Hess Corporation (Amerada) and Chesapeake Exploration Limited Partnership (Chesapeake), successor by merger to DLB Oil & Gas, Inc. (DLB), seek review of the trial court's final order granting summary judgment in favor of Plaintiff/Appellee, Samson Resources Company (Samson) on Samson's claim for specific performance under the preferential right to purchase clauses of three oil and gas joint operating agreements (JOAs). We hold Amerada was required by the maintenance of unit ownership clause of each JOA to offer its entire interest covered by the JOA to DLB, and therefore Samson was required to accept the entire interest under each JOA in order to exercise its preferential right to purchase. We affirm the trial court's order as to the wells covered by one JOA in which Samson accepted all of Amerada's interest and reverse to the extent it ordered specific performance relating to any of the other subject interests.

¶ 2 Amerada and Samson were parties to three JOAs which contained the following preferential right to purchase clause:

Should any party desire to sell all or any part of its interests under this contract, or its rights and interests in the Unit Areas, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the name and address of the prospective purchaser (who shall be ready, willing and able to purchase), the purchase price, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell; ...

The JOAs also contained a maintenance of unit ownership clause:

For the purposes of maintaining uniformity of ownership in the oil and gas leasehold interests covered by this contract, and notwithstanding any other provision to the contrary, no party shall sell, encumber, transfer or make other disposition of its interest in the leases embraced within the

Unit Area and in wells, equipment and production unless such disposition covers either:

(1) the entire interest of the party in all leases and equipment and production; or

(2) an equal undivided interest in all leases and equipment and production in the Unit Area.

Every such sale, encumbrance, transfer or other disposition made by any party shall be made expressly subject to this agreement, and shall be made without prejudice to the rights of the other parties.

¶ 3 On April 16, 1996, Amerada entered a contract to sell its interests in hundreds of leases[1] to DLB for the total sum of $35,028,000.00. They agreed to allocate the purchase price among the assets in accordance with the fair market value of the assets, as set forth in an attachment to the contract. Section 8.1 of the contract provided in part,

If a third party who has been offered an interest in a Subject Interest pursuant to a preferential right to purchase, elects prior to closing to purchase all or part of such Subject Interest pursuant to the aforesaid offer and Seller receives written notice of such election prior to the Closing Date, the interest or part thereof so affected will be eliminated from the Assets and the Purchase Price reduced by the portion of Purchase Price allocated to such interest or part thereof. . . . Otherwise the interest offered as aforesaid shall be conveyed to Buyer at Closing subject to the preferential rights (if any of them remain) of such third party. If a third party elects to purchase all or a part of an interest in a Subject Interest subject to a preferential right to purchase and Closing has already occurred (and payment of the Purchase Price made to Seller) with respect to such interest, Buyer shall be obligated to convey said interest to such third party and shall be entitled to the consideration for the sale of such interest or part thereof.

¶ 4 On May 21, 1996, Amerada sent a letter notifying Samson it was selling its interests in the Berryman "E" well and Berryman "E"

2–13 well. Samson responded, electing to purchase only Amerada's interest in the Berryman "E" well.

¶ 5 In a letter dated May 28, 1996, Amerada notified Samson it was selling its interests in the Helen F. Cooprider Unit and Berryman "A" well. Samson elected to purchase both wells.

¶ 6 On May 30, 1996, Amerada notified Samson it was selling its interests in the Henry Rich well, the Betty Joe No. 1 well, the Sage No. 1 well, the Morstain No. 1–32 well, and the Rich No. 2–32 well. Samson elected to purchase the interests in the Henry Rich well, the Sage No. 1 well, and the Rich No. 2–32 well.

¶ 7 On May 31, 1996, Amerada notified Samson it was selling its interests in the James Berryman, James Berryman "F", and James Berryman "G" wells. Samson elected to purchase only the James Berryman "F" well.

¶ 8 Amerada sent Samson a letter dated May 31, 1996, notifying Samson that Amerada did not consider Samson's election to purchase the James Berryman "E" well to be a valid election because Samson did not elect to purchase both the James Berryman "E" and "E" 2–13 wells. On the same day, Amerada transferred all its interests subject to the sale agreement to DLB. In a letter dated June 19, 1996, DLB advised Samson it concurred with Amerada's letter of May 31, 1996, and considered Samson's election to purchase the James Berryman "E" well to be invalid. On June 10, 1996, DLB sent letters to Samson asserting it owned interests in the Henry Rich and Cooprider No. 1 wells and demanding interim cash balancing between the owners in those wells.

¶ 9 Samson, as well as Plaintiffs Charles Schusterman Enterprises and Samson Properties, Inc., filed suit against Amerada and DLB on July 15, 1996, seeking specific performance under the preferential right to purchase provisions of the JOAs. Samson also asserted causes of action for breach of contract, tortious interference with contract, conversion, and injunctive relief. Amerada

---

**1.** According to DLB witness Jay Thomas, the agreement "covered approximately 1,196 wells, approximately 1,476 oil and gas leases covering approximately 68,000 net leasehold acres."

answered, while DLB answered and counterclaimed for breach of contract.

¶ 10 All parties moved for summary judgment. Charles Schusterman Enterprises and Samson Properties, Inc., later withdrew their motions. On August 27, 1999, the trial court entered judgment in favor of Samson on its claim for specific performance and ordered DLB to convey the subject interests to Samson upon payment of the allocated purchase price. It entered judgment for Amerada and DLB on Samson's claims for tortious interference with contract and conversion.

¶ 11 DLB appealed the trial court's judgment. The Oklahoma Supreme Court dismissed the appeal on January 25, 2000, because the trial court's order did not resolve the claims of the other two plaintiffs against the defendants, did not expressly dispose of the plaintiffs' breach of contract theory, and did not expressly resolve DLB's counterclaim. The order did not expressly determine there was no just reason for delay and direct the filing of judgment.

¶ 12 As DLB's successor, Chesapeake moved the trial court to reconsider based on new authority, or in the alternative, to enter a final appealable judgment. The new authority Chesapeake cited was *Brown v. J.M. Huber Corp.*, No. 99–6344, 2000 WL 1234851 (10th Cir., Aug.31, 2000), a case in which the U.S. Court of Appeals ruled Samson had failed to match the buyer's offer when it exercised its preferential right to purchase as to only one of two wells included in a package deal. Amerada moved for summary judgment, arguing *Brown* collaterally estopped Samson from relitigating the split-election issue in this case. Samson objected, arguing collateral estoppel did not bar it from asserting the same position in this lawsuit that it asserted in *Brown*.

¶ 13 On August 3, 2001, the trial court denied both motions and entered a final judgment restating its original ruling. It found all claims, counterclaims, and defenses in the action had been fully resolved or voluntarily dismissed. Chesapeake and Amerada appeal without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup.Ct. R. 1.36, 12 O.S.Supp. 1996, Ch. 15, App. The issues they raise in

the petition in error are (1) whether Samson is collaterally estopped under the doctrine of defensive nonmutual collateral estoppel as to the dispositive issues determined by the *Brown* court, (2) whether the preferential right to purchase clause allowed Samson to purchase only a divided part of the interests offered under each JOA, (3) whether Samson's exercise of the preferential right to purchase over only a divided portion of the interests violates the Maintenance of Unit Ownership clause of the JOAs, (4) whether Samson's partial election was a rejection, not an acceptance, of Amerada's offer, and (5) whether Samson had anything more than a contingent ability to purchase the same interests being offered to DLB under each JOA on the same terms and conditions as those offered to DLB.

I

¶ 14 In its second motion for summary judgment, Amerada argued the doctrine of issue preclusion may be applied defensively by a party who is a stranger to the prior lawsuit to defeat the claim of the plaintiff who lost the same issue in another lawsuit, citing *Travelers Prop. Cas. Corp. v. Jim Walter Homes, Inc.*, 1998 OK CIV APP 80, 966 P.2d 1190, which in turn cited *Anco Mfg. & Supply Co. v. Swank*, 1974 OK 78, 524 P.2d 7, and *Carris v. John R. Thomas and Assoc.*, 1995 OK 33, 896 P.2d 522. In *Carris*, the Oklahoma Supreme Court stated, "Generally, the application of issue preclusion requires an identity of the parties to both proceedings." 896 P.2d at 527–528. It recognized the *Anco* Court had applied an exception to the general rule in "allow[ing] the stranger to the first action to defensively assert estoppel when the party against whom the estoppel was being asserted was attempting to assert inconsistent facts in the second action," but declined to apply that exception in *Carris* because the plaintiff was not asserting inconsistent facts. *Id.* at 528. In *Travelers*, the Court of Civil Appeals criticized *Carris* for confusing collateral estoppel with judicial estoppel and quasi-estoppel. 966 P.2d at 1191 n. 1. It stated, "[j]udicial estoppel may be invoked to prohibit assertion of 'inconsistent positions assumed in the course of the same judicial proceedings, or in

subsequent proceedings involving identical parties and questions,' " while "the doctrine of quasi-estoppel can be invoked by a stranger to prior litigation to preclude assertion of inconsistent positions, but only if it would be unconscionable to permit a party to prior litigation to assert an inconsistent position in a subsequent proceeding." *Id.* (citations omitted).

¶ 15 Here, the doctrine of issue preclusion is not available because Amerada and DLB were not parties to *Brown.* Neither the doctrines of "defensive nonmutual collateral estoppel" nor quasi-estoppel are available because Samson is not asserting inconsistent facts or positions. The trial court did not err in refusing to hold Samson estopped by *Brown* from litigating in this case the validity of its elections under the preferential right to purchase clauses.

## II

¶ 16 Amerada and Chesapeake's remaining contentions of error relate to the interpretation of contract terms. Their position is Samson's attempt to purchase only a divided portion of the interests offered under each JOA violated the preferential right to purchase clause and the maintenance of unit ownership clause. They contend Samson was required to accept or reject all the interests to which it held a preferential right to purchase, and failure to do so resulted in a rejection of Amerada's offer. They argue Samson had only the contingent ability to purchase the same interests being offered to DLB under each JOA on the same terms and conditions as those offered to DLB.

¶ 17 The preferential right to purchase clause of the JOAs granted the parties "an optional prior right ... to purchase on the same terms and conditions the interest which the other party proposes to sell." In applying a similar clause in *Ollie v. Rainbolt,* 1983 OK 79, 669 P.2d 275, 280–281, the Court stated,

It is basic in contract law that an acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer. The same principle applies to the rights of first refusal. When a preemptive right calls upon the preemption holder to meet the terms iden-

tical to a third party's offer which the seller intends to accept, the outstanding offer becomes, in essence, by operation of the right of first refusal, the seller's offer to the preemption holder. In order to accept the offer, the preemption holder must fully meet the terms and conditions of the offer in his acceptance.

The right to purchase on the same "terms and conditions" gave the [preemption holder] only the benefit of the same bargain to the preemption-encumbered stock as that which the sellers were willing to afford to their offeror.

Therefore, Amerada's offer to DLB became its offer to Samson as preemption holder. In order to accept the offer, Samson had to fully meet the terms of the deal between Amerada and DLB as to the interests covered by the preferential right to purchase.

¶ 18 Amerada characterizes its agreement with DLB as a package deal and argues Samson must accept all wells covered by each JOA as a package. Samson disagrees, arguing the sale contract between Amerada and DLB does not propose to sell all of Amerada's interests under each JOA as an indivisible unit. To the contrary, § 8.1 of the contract establishes DLB's willingness to accept all or any part of Amerada's interests at the allocated prices.

¶ 19 However, the maintenance of unit ownership clause constrained the terms upon which Amerada could offer its interests to DLB. That clause required Amerada to sell its entire interest in all the leases or an equal undivided interest in all the leases covered by each JOA. By the terms of the maintenance of unit ownership clause, the sale contract was made expressly subject to that clause. Therefore, Amerada's offer to DLB, which became its offer to Samson as preemption holder, was to sell its entire interest in all the leases covered by each JOA. The maintenance of unit ownership clause was a term and condition of the sale contract. In order to accept the offer, Samson was required to accept that condition and purchase Amerada's entire interest under each applicable JOA.

¶ 20 Samson did accept Amerada's entire interest under the JOA covering the Helen

F. Cooprider Unit and Berryman "A" wells, but failed to accept Amerada's entire interest under the other JOAs. Therefore, the trial court's order is AFFIRMED to the extent it ordered DLB to convey the interests in the Helen F. Cooprider Unit and Berryman "A" wells upon Samson's payment of the allocated purchase price. It is REVERSED to the extent it ordered specific performance relating to any of the other subject interests.

GARRETT, J., and BUETTNER, P.J., concur.