**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

WILLIAM A. STRONG; CAROLYN
E. STRONG,

    Plaintiffs - Appellants,

v.

DONALD D. LAUBACH,

    Defendant - Appellee.

_____

MICHAEL DOBRINSKI; LAUBACH-
DOBRINSKI AUTOPLEX, INC.;
formerly known as Laubach-Dobrinski
Chevrolet-Oldsmobile Inc.; JIM
DOBRINSKI CHEVROLET INC.;
JAMES POSEY DOBRINSKI, also
known as James P. Dobrinski;
DOBRINSKI OF KINGFISHER INC.;
LIBERTY MUTUAL INSURANCE
COMPANY; SOUTHWESTERN
BELL TELEPHONE COMPANY,

    Garnishees.

No. 03-6316
(W.D. Oklahoma)
(D.Ct. No. 95-FJ-22-L)

**ORDER AND JUDGMENT**[*]

_____

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **EBEL**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Resolution of this case turns on whether Oklahoma recognizes the doctrine of defensive non-mutual collateral estoppel and, if so, whether the federal district court erred in determining it was available and applicable to a holding of the Oklahoma Supreme Court.[1] We are not convinced Oklahoma recognizes defensive non-mutual collateral estoppel and, even if it does, the appellee has not met his burden of demonstrating the doctrine is available and should be applied in his favor. Exercising jurisdiction under 28 U.S.C. § 1291, we REVERSE.[2]

*Background*

In 1994, William A. Strong II and Carolyn E. Strong (Strongs) secured a judgment against Donald D. Laubach (Laubach) in the United States District Court for the Eastern District of Missouri for $484,432.29. The judgment arose

---

[1] The district court decided, in form, that the holding of the Oklahoma Supreme Court in *U.S. Mortgage v. Laubach*, 73 P.3d 887 (Okla. 2003), relative to the dormancy of the Strongs' judgment, deserved full faith and credit, *see* 28 U.S.C. § 1738. In substance it decided that 1) Oklahoma recognizes the doctrine of defensive non-mutual collateral estoppel, and 2) the doctrine is both available and applicable in this case. Likewise, although the parties confine their arguments to the res judicata effect, if any, that should be accorded the holding of the Oklahoma Supreme Court in *U.S. Mortgage*, we discern the issue to turn more precisely on a specific variant of res judicata, to wit, defensive non-mutual collateral estoppel.

[2] We deny the Strongs' motion at oral argument to supplement the record.

out of a loan the Strongs made to Laubach secured by a term life insurance policy on Laubach's life. The Strongs registered the judgment in the United States District Court for the Western District of Oklahoma on August 21, 1995. *See* 28 U.S.C. § 1963 (providing for registration of judgments obtained in other federal district courts).[3]

Laubach owned real property in Oklahoma County, Oklahoma. On September 3, 1998, the Strongs perfected a lien on Laubach's real property by filing an affidavit of judgment with the Oklahoma County Clerk. *See* OKLA. STAT. tit. 12, § 706(B) ("A judgment . . . shall be a lien on the real estate of the judgment debtor within a county only from and after a Statement of Judgment made by the judgment creditor . . . has been filed in the office of the county clerk in that county.").[4] The Strongs' lien was junior to one held by U.S. Mortgage. Also junior to the U.S. Mortgage lien was a lien perfected by Danny Hurst on

---

[3] "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963.

[4] 28 U.S.C. § 1962 provides:

Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time.

August 18, 1999.[5] *See U.S. Mortgage v. Laubach,* 73 P.3d 887, 891-92 (Okla. 2003).

U.S. Mortgage brought a foreclosure suit against Laubach in Oklahoma state court when he defaulted on payments. Named in the suit were Laubach and the junior lienholders. Hurst assigned his interest in his lien to other persons (Hurst Creditors). U.S. Mortgage moved for summary judgment, as did the Strongs and the Hurst Creditors.[6] The Strongs maintained their lien was senior to that of the Hurst Creditors because it was perfected first. The Hurst Creditors countered that the Strongs' lien had expired by operation of statute. *See* OKLA. STAT. tit. 12, § 759(C) (requirements to extend judgment lien beyond initial or any subsequent statutory period). The Oklahoma trial court denied summary judgment to the Strongs and awarded summary judgment to the Hurst Creditors.[7]

On appeal, the Oklahoma Supreme Court encapsulated the question under review: "The issue presented by this appeal is whether [the Strongs'] judgment lien retained its efficacy at the time the trial court was called upon to determine

---

[5] The Oak Tree Home Owners Association (Association) also perfected a lien against Laubach's property in Oklahoma County. The priority of its lien is not germane to this appeal.

[6] The Hurst Creditors intervened as third party plaintiffs, naming Laubach, the Strongs and the Association as third-party defendants. The Strongs cross-claimed against Laubach, the Hurst Creditors and the Association.

[7] The court also found the U.S. Mortgage lien was senior to all others. *U.S. Mortgage,* 73 P.3d at 892.

the order of priority among the competing liens." *U.S. Mortgage,* 73 P.3d at 891. In its discussion, the supreme court declaimed at some length on Oklahoma's dormancy statute, *see* OKLA. STAT. tit. 12, § 735 (1991), and its effect on the judgment underlying the Strongs' lien. Nonetheless, the court limited its decision to affirm to the question presented: "We hold that, on this record, the [trial court's] order of priority among competing liens is correct." *U.S. Mortgage,* 73 P.3d at 902.

In 1993, Laubach stopped paying the premiums on the term life insurance policy that collateralized his loan from the Strongs. In order to keep the policy in effect, the Strongs took over the premium payments. Later, to further secure their position, they decided to seek conversion of the policy from a term policy to a whole life policy. In order to do this, however, either Laubach had to agree to the change or the Strongs had to acquire ownership of the policy and effect the change themselves. To this latter end, acting pursuant to the provisions of the Uniform Commercial Code (as adopted in Oklahoma), the Strongs undertook to sell the policy at public auction. *See* OKLA. STAT. tit. 12A, § 1-9-610(a),(b) (after default, a secured party may sell collateral in a commercially reasonable manner).

The Strongs purchased the policy at public sale on April 14, 2003. Thereafter, they moved the United States District Court for the Western District of Oklahoma to confirm the sale. After initially confirming the sale, the court reversed course. On

August 21, 2003, it vacated its order confirming the sale on the grounds, advanced by Laubach, that the Oklahoma Supreme Court had decided the Strongs' underlying judgment was dormant; this being so, the judgment could not support an action in federal district court to enforce it. In the district court, Laubach argued the Oklahoma decision deserved preclusive collateral estoppel effect. The Strongs then moved to vacate the August 21, 2003 order, maintaining the Oklahoma Supreme Court decision only reached the vitality of their judgment lien, not the underlying judgment. The court conducted a hearing and, on October 15, 2003, denied the Strongs' motion to vacate the August 21, 2003 order. In its order, the court ruled: "On July 7, 2003, the Oklahoma Supreme Court affirmed a state trial court's ruling that [the Strongs'] judgment lien was unenforceable. In making this ruling, the Oklahoma Supreme Court necessarily found that judgment underlying the lien became dormant by operation of Oklahoma state law." (Appellants' App. at 162 (citation omitted).) The effect of the district court's order was that the sale of the term life insurance policy was disallowed.

### *Standard of Review*

"We must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state in which the judgments were rendered." *Davis v. Gracey,* 111 F.3d 1472, 1477 (10th Cir. 1997) (internal quotation marks omitted). *See also* 28 U.S.C. § 1738 (state court judgments merit

full faith and credit). In other words, the extent to which Oklahoma recognizes the doctrine of defensive non-mutual collateral estoppel is a legal determination. Whether or not the doctrine is available in a particular case is also a question of law. *See Cities Serv. Co. v. Gulf Oil Corp.,* 980 P.2d 116, 124 (Okla. 1999) ("[O]ur review of the *availability* of . . . nonmutual collateral estoppel--which includes the requirements of identical issues actually and necessarily determined by a final and valid decision, i.e. *legal* conclusions--is plenary."). On the other hand, the application of the doctrine in a particular case is reviewed for an abuse of discretion. *Id.* ("[T]he trial court's decision to give preclusive effect to the earlier . . . ruling . . . i.e., whether the prerequisites of a full and fair opportunity to litigate the issue in the earlier proceedings and fairness are present [*factual* determinations]--is assayed . . . under the deferential abuse-of-discretion standard."). The party seeking the benefit of collateral estoppel bears the burden of demonstrating its availability and applicability. *See James v. Unknown Trs., Etc.,* 220 P.2d 831, 834 (Okla. 1950).

### *Discussion*

Generally, collateral estoppel, known in modern parlance as issue preclusion, means

> once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. Issue preclusion prevents relitigation of facts and issues actually litigated and necessarily determined in an earlier proceeding between the same parties or their privies. An issue is actually litigated and necessarily determined if it is

properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.

*State ex rel. Oklahoma Bar Ass'n v. Giger,* 93 P.3d 32, 38 (Okla. 2004) (footnotes omitted). "[T]he doctrine may not be invoked if the party against whom the earlier decision is interposed did not have a full and fair opportunity to litigate the critical issue in the previous case." *Nat'l Diversified Bus. Servs., Inc. v. Corp. Fin. Opportunities, Inc.,* 946 P.2d 662, 666-67 (Okla. 1997) (internal quotation marks omitted).

In some jurisdictions, collateral estoppel has been expanded to include its use by strangers to the original judgment. When used defensively, this variant of issue preclusion is known as defensive non-mutual collateral estoppel. Non-mutual refers to the fact that the party who raises the defense was neither a party to nor in privity with a party to the previous litigation. *See* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4463 (2d ed. 1987). Defensive non-mutual collateral estoppel "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hoisery Co. v. Shore,* 439 U.S. 322, 326 n.4 (1979). Inasmuch as Laubach was not a party to the lien priority dispute between the Strongs and the Hurst Creditors, in effect he relies on defensive non-mutual collateral estoppel when he maintains the Oklahoma Supreme Court's decision that the Strongs' judgment was dormant should preclude their assertion to the contrary in

the federal district court.

### A. *Whether defensive non-mutual collateral estoppel is recognized in Oklahoma*

While Oklahoma recognizes the collateral estoppel defense generally, *see Laws v. Fisher,* 513 P.2d 876, 877 (Okla. 1973), it is less clear whether it recognizes defensive non-mutual collateral estoppel. In *Anco Mfg. & Supply Co., Inc. v. Swank,* the Oklahoma Supreme Court allowed defensive non-mutual collateral estoppel to bar a claimant in State Industrial Court from asserting her deceased husband was an employee of Anco when, in an earlier proceeding in which claimant sued another party, a jury had determined the same question to the contrary. 524 P.2d 7 (Okla. 1974). "The only issue presented here is whether or not the doctrine of collateral estoppel may be applied defensively. We can see no legal or logical reason why it should not apply under the facts herein presented." *Id.* at 13. *See also Parret v. UNICCO Serv. Co.,* - - P.3d - -, No. 99,883, 2005 WL 1515924, at *10 n.2 (Okla. June 28, 2005) (Opala, J., dissenting) ("This court recognized in *Anco* . . . that the issue preclusion doctrine may be asserted defensively."); *Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.,* 77 P.3d 1042, 1061 n.32 (Okla. 2003) (Opala, J., dissenting) (observing, in dicta, that "the U.S. Supreme Court has, in recent years, broadened the scope of the doctrine of collateral estoppel beyond its common-law limits. It has done so by abandoning the requirement of mutuality of parties[.]").

On the other hand, in *Carris v. John R. Thomas & Assocs., P.C.*, the Oklahoma

-9-

Supreme Court limited its holding in *Anco* to the specific facts of the case:

> [I]n *Anco* this Court did not require that the parties be identical where a party who assumed a position in one adjudication attempted to assert an inconsistent position against another party in a subsequent lawsuit. We allowed the stranger to the first action to defensively assert estoppel when the party against whom the estoppel was being asserted was attempting to assert inconsistent facts in the second action. *Anco* is not dispositive of the present case because [the plaintiff] is not attempting to assert inconsistent facts in her lawsuit against [the defendants] from those she asserted in the [previous] proceeding.

896 P.2d 522, 528 (Okla. 1995).

In *Travelers Prop. Cas. Corp. v. Jim Walter Homes, Inc.,* the Oklahoma Court of Appeals, in discussing the provenance of defensive non-mutual collateral estoppel in Oklahoma, likewise restricted the reach of *Anco* when it observed that the facts in *Anco* suggested application of either judicial estoppel or quasi-estoppel instead of collateral estoppel. 966 P.2d 1190 (Okla. Civ. App.), *cert. denied* (May 12, 1998). "The doctrine of judicial estoppel, not collateral estoppel, is applied to prevent advancement of inconsistent positions vis-a-vis matters of fact. Judicial estoppel may be invoked to prohibit assertion of inconsistent positions assumed in the course of the same judicial proceedings, or in subsequent proceedings involving identical parties and questions." *Id.* at 1191 n.1 (internal citation and quotation marks omitted). While the court conceded that the question of whether judicial estoppel could be invoked by a stranger to the first litigation was unsettled, quasi-estoppel was available to a stranger to prior litigation. "[T]he doctrine of quasi-estoppel can

be invoked by a stranger to prior litigation to preclude assertion of inconsistent positions, but only if it would be unconscionable to permit a party to prior litigation to assert an inconsistent position in a subsequent proceeding[.]" *Id.*

Finally, in *Samson Res. Co. v. Amerada Hess Corp.,* the Oklahoma Court of Appeals declined to permit a party to invoke defensive non-mutual collateral estoppel when it was a stranger to the prior litigation whose judgment it sought to use as a bar and the party against whom the bar was sought was not advocating a position in the second litigation inconsistent with the position it took in the first litigation. 41 P.3d 1055, 1059 (Okla. Civ. App. 2001), *cert. denied* (Feb. 26, 2002). "Here, the doctrine of issue preclusion is not available because Amerada and DLB were not parties to [the prior litigation]. Neither the doctrines of defensive nonmutual collateral estoppel nor quasi-estoppel are available because Samson is not asserting inconsistent facts or positions." *Id.* (internal quotation marks omitted).

Based on the foregoing, we conclude that Oklahoma recognizes only a limited variant of defensive non-mutual collateral estoppel. From our canvas of the Oklahoma cases, we discern that a party may rely on defensive non-mutual collateral estoppel only in those instances when the party sought to be estopped is advocating a position in the second litigation that is inconsistent with the position it took in the first litigation. That is not the case here. Laubach does not contend, nor does the record support the proposition, that the Strongs advocated a different position in the

-11-

district court with respect to the dormancy of their judgment than the one they pressed in the state court. In fact, the Strongs contend the dormancy of their judgment was never an issue in the state court, which was only concerned with the vitality of their judgment lien. *See* discussion, *infra*. In any event, we can conceive of no circumstance where the Strongs would have an incentive to argue their judgment was dormant. As a consequence, applying Oklahoma law, we conclude Laubach cannot rely on defensive non-mutual collateral estoppel to preclude the Strongs from arguing in the district court against the dormancy of their judgment.

### B. Assuming defensive non-mutual collateral estoppel is recognized in Oklahoma, whether it is available in this case

"[I]t is incumbent upon the party asserting the [collateral estoppel] defense to prove that the issues were actually litigated and determined in the former action." *Happy Elevator No. 2 v. Osage Constr. Co.,* 209 F.2d 459, 462 (10th Cir. 1954) (citing *Morgan v. Whitehead,* 165 P.2d 338, 341 (Okla. 1946) ("Under the record presented in the case at bar, in no possible way can this court know the issues or the judgment in the former case. They were not proved.")). *See also* 18 , CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4420 (2d ed. 1987) (inadequate proof of issues litigated and determined in former action results in "opaque judgment [that] fails to preclude relitigation.").

Laubach first raised the preclusive effect of the Oklahoma decision in his objection to the district court's order confirming the sale of the term life insurance

-12-

policy. He did so by asserting: "Pursuant to Oklahoma Supreme Court Opinion 2003 OK 67 [the Strongs'] Judgement [sic] has become dormant by [the Strongs'] failure to file the required documents within the five year statutory period. If said Judgement [sic] has become dormant then this court has lost all jurisdictional authority in this matter." (Appellants' App. at 125.) The Strongs answered that the Oklahoma Supreme Court decision was limited to affirming the trial court's ruling that their judgment lien had expired. Laubach adduced no further evidence in the district court beyond the bare pleading just noted. In particular, he did not produce a record of the summary judgment proceedings in the Oklahoma trial court. Such a record would have enlightened the district court as to the precise target of the Hurst Creditors' motion for summary judgment. Were they challenging the vitality of the Strongs' judgment or just the vitality of their judgment lien?[8] To which issue was the ruling of the trial court confined? Instead of producing evidence to satisfy his burden of proof, Laubach cast his fate with the Oklahoma Supreme Court opinion. It falls shy of winning the day for him.

With the paucity of evidence adduced by Laubach to support his defensive non-

---

[8] If dormancy of the judgment had been at issue in the state court summary judgment proceedings, the Strongs had evidence of multiple garnishment summonses issued by the Clerk of the United States District Court for the Western District of Oklahoma between March 1998 and July 2000 which were sufficient to demonstrate their judgment had not become dormant. Needless to say, the district court could have taken judicial notice of these same records. *(See* Appellants' App. at 4-13, 27-28, 30-31, 37-38, 44-46, 48, 143.)

-13-

mutual collateral estoppel argument, we are relegated to divining from the Oklahoma Supreme Court opinion itself, as best we can, the precise nature of its holding. If it is as Laubach contends, defensive non-mutual collateral estoppel is available (assuming the doctrine is recognized in Oklahoma). If not, or if it is opaque as to whether it is so, then Laubach has not met his burden of proof and preclusion fails.

Our quest to identify the issue "actually and necessarily" decided by the Oklahoma Supreme Court begins with an examination of the applicable Oklahoma statutes. First, Oklahoma statute prescribes the means to continue the vitality of a judgment and avoid dormancy:

> If execution is not issued and filed as provided in Section 759 of this title or a garnishment summons is not issued by the court clerk within five (5) years after the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five (5) years has intervened between the date that the last execution on such judgment was filed or the date that the last garnishment summons was issued as provided by Section 759 of this title, and the date that writ of execution was filed or a garnishment summons was issued as also provided in Section 759 of this title, such judgment shall become unenforceable and of no effect, and shall cease to operate as a lien on the real estate of the judgment debtor.

OKLA. STAT. tit. 12, § 735 (1991). Second, Oklahoma statute prescribes the means of continuing the vitality of a judgment lien:

> To extend a judgment lien beyond the initial or any subsequent statutory period, prior to the expiration of such period, one of the following shall be filed and indexed in the same manner as judgments in the office of the county clerk in the county in which the statement of judgment was filed and the lien thereof is sought to be retained:
>
> 1. A certified copy of a general execution upon the judgment;

-14-

2.  A certified copy of a notice of renewal of judgment; or

3.  A certified copy of a garnishment summons issued against the judgment debtor.

OKLA. STAT. tit. 12, § 759(C) (1997).

The requirements to preserve a judgment and those to preserve a judgment lien are notably different.  When a judgment lien expires, it does not necessarily follow that the underlying judgment goes dormant.  A simple example suffices.  A judgment will survive with proof that the clerk of the court where the judgment was rendered or registered issued a garnishment summons within the statutory five year period.  A judgment lien secured by the very same judgment, on the other hand, will expire unless there is proof of filing of a certified copy of the garnishment summons with the clerk of the county where the liened property is located.  The objects of the two statutes are dissimilar.  One governs the vitality of the judgment itself while the other governs the vitality of the lien enabled by the judgment.

## I.     *"Actually" Decided*

"The fundamental rationale of issue preclusion dictates the clearly settled requirement that it be limited to matters that have been actually decided."  18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4420 (2d ed. 1987).

> The major practical problem posed by the actual decision requirement lies
> in the need to discover what it was that has been actually decided.  In cases

tried to a judge, express findings of fact and conclusions of law often show clearly what has been--and what has not been--decided.

*Id.*

In order to determine the issue actually decided by the Oklahoma Supreme Court, we need look no further than its characterization of the trial court decision and its resolution of the question presented. The supreme court characterized the trial court decision as follows:

> The trial court (a) gave summary judgment to Hurst creditors and denied [the Strongs'] motion for like relief, (b) declared that [the Strongs] obtained a Missouri federal-court judgment and registered it for enforcement as a domestic judgment on 21 August 1995 in the U.S. District Court for the Western District of Oklahoma, (c) declared that [the Strongs] failed to file in the county clerk's office either a notice of renewal of judgment, a garnishment summons issued against the judgment debtor (Laubach) or a notice of income assignment on or before 21 August 2000, concluding that [the Strongs'] judgment lien expired by operation of 12 O.S.Supp.1997 § 759(C) and was hence no longer efficacious, and (d) determined the order of priority among the liens upon the real property in suit - U.S. Mortgage (first lien), Hurst creditors (second lien), Association (third lien) - as well as the amount of Hurst creditors' and Association's lien, and (e) directed that Hurst creditors' lien be satisfied from the proceeds, if any remain, of the sale of the property in accordance with the order of priorities.

*U.S. Mortgage,* 73 P.3d at 892 (footnote omitted). The supreme court then resolved the issue presented: "Because [the Strongs] failed to show that they had filed in the county clerk's office a certified copy of the garnishment summons timely issued by the federal court clerk, the trial court correctly concluded that their judgment lien was no longer efficacious." *Id.* at 898.

-16-

In a footnote, the supreme court listed the scant proof adduced by the Strongs in

the trial court of the continued vitality of their judgment lien:

> In support of their quest for summary relief, [the Strongs] attach (1) their lawyer's affidavit; (2) an affidavit of judgment that was recorded in the Oklahoma County Clerk's office on 3 September 1998; (3) a garnishment summons recorded in the county clerk's office on 13 September 2002, which is neither certified by the federal court clerk nor indicates on its face the date of issuance in the federal-court case; (4) a page (which appears to have been generated by a computerized search of the county clerk records) indicating that the Association had filed an assessment lien on 10 May 2002; and (5) copies of two state statutes.

*Id.* at 892 n.4. It is beyond peradventure that none of these items satisfies the

requirements of § 759(C).[9] It is no surprise the state trial court settled lien

_____

[9] In support of their motion for summary judgment in the state trial court, and as a means of demonstrating their compliance with OKLA. STAT. tit. 12, § 759(C)(3) (1997) (providing requirements for maintaining vitality of judgment lien), the Strongs submitted a garnishment summons purportedly issued by the Clerk of the United States District Court for the Western District of Oklahoma (where the foreign judgment was registered) and which was filed with the Oklahoma County Clerk on September 13, 2002. *See U.S. Mortgage*, 73 P.3d at 898. However, the garnishment summons was not certified by the Clerk of the federal court, as required by § 759(C)(3); nor was it filed with the Oklahoma County Clerk within five years of August 21, 1995 (the date the foreign judgment was registered in the United States District Court for the Western District of Oklahoma). For these reasons, and because the Strongs had not otherwise satisfied the requirements of § 759(C), the district court denied summary judgment to the Strongs and awarded summary judgment to the Hurst Creditors. *Id.* at 892. The Oklahoma Supreme Court affirmed on the same basis, not on the basis the judgment was dormant:

> It was [the Strongs'] burden to prove (a) the continued efficacy of their non-Oklahoma judgment by showing that it had not become dormant for want of issuance of process or garnishment since its registration in August 1995 and (b) that the judgment lien which secures that obligation had retained its efficacy by [their] compliance with the statutory filing requirements. The other lien creditors bore no more than the burden of

priority against the Strongs.  Nor is it surprising the supreme court affirmed.  We have carefully examined the Oklahoma Supreme Court decision and identify no clear holding other than the one affirming lien priority.  The decision discusses dormancy only as it relates to the Strongs' failure to adequately document their case for lien priority.  The

proving the efficacy status of their own judgments (and judgment liens).

As a general rule, acceptable probative substitutes may be used as evidentiary materials in the summary process of adjudication to eliminate from the adversary contest any disputed fact issues.  The evidentiary materials required to show the present efficacy of the judgment lien are not controlled by Rule 13's evidentiary substitutes in summary process.  To show the judgment lien's present effectiveness [the Strongs] must tender documentation that meets the standards of § 759(C.)  That documentation must (a) bear the federal court clerk's certificate which identifies the document as a true and correct copy of the original on file in the clerk's office as well as (b) be filed in the Oklahoma County Clerk's office before the dormancy period has run on the registered federal-court judgment.

Attached to [the Strongs'] motion for summary judgment is a garnishment summons represented as having been issued in the federal-court case.  The summons, which bears a notation that it was recorded in the Oklahoma County Clerk's office on 13 September 2002, neither reflects the date of its issuance nor bears a certificate that it is a true and correct copy of the document in the custody of the federal court clerk.  Without the court clerk's certificate the tendered document fails to meet the § 759(C) standard for keeping the judgment lien alive.  Moreover, in the form submitted, the garnishment summons does not meet the general evidence law's requirement for certification when there is reliance on a document from another court.  In sum, absent the required certification we cannot recognize the garnishment summons attached to [the Strongs'] motion for summary judgment as a legitimate or acceptable Rule 13 probative substitute.

*Id.* at 897-98 (footnotes omitted).

-18-

Oklahoma Supreme Court "actually" decided only lien priority. As a consequence, Laubach has not met his burden to show preclusive effect should be given to the resolution of the dormancy issue on the basis it was "actually" decided by the Oklahoma Supreme Court.

### ii. *"Necessarily" Decided*

Even if we assume the Oklahoma Supreme Court "actually" decided the Strongs' judgment had become dormant, we face the more complicated question of whether such a determination was "necessary" to its decision affirming the trial court's ruling as to lien priority. If it was, we must further consider Laubach's entitlement to defensive non-mutual collateral estoppel. If it was not, our inquiry ends and the estoppel defense is unavailable.

"Issue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action." 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4421 (2d ed. 1987). "If the inquiry reveals that the matters had come under consideration only collaterally or incidentally, preclusion is denied." *Id.* (quotation marks omitted).

> [T]he inquiry into necessity is likely to be a largely objective process, in which a later court simply asks what was reasonably necessary to support the prior judgment. The possibility that a particular finding may have played a central role in the subjective process of deciding the first action is apt to be put aside, primarily because it is very difficult to reconstruct the process of decision with any certainty.

*Id.* With these principles in mind, we examine the Oklahoma Supreme Court decision.

-19-

We first try to discern the purpose of the supreme court's extended discussion of the dormancy statute. *See U.S. Mortgage,* 73 P.3d at 893-97. We find it emerges in response to an argument the Strongs made that the five year statutory period referenced in §§ 735 and 759(C) began on the date they perfected their lien in Oklahoma County (September 3, 1998), not the date they registered their judgment with the United States District Court for the Western District of Oklahoma (August 21, 1995). *See id.,* 73 P.3d at 895. For this reason, they argued, their lien remained vital when the trial court ruled. *Id.* at 894. As the supreme court put it, "[t]he tendered issue requires an analysis of the state dormancy statute's impact upon a registered federal-court judgment and upon the judgment lien which secures that obligation." *Id.* at 895. The supreme court engaged in this analysis and concluded the Strongs' argument was without merit. A plain reading of the applicable statutes indicates why, and we need not examine the argument further. Suffice it to say, we have identified what prompted the supreme court's extended discussion of dormancy.

Our examination is not concluded. In summarizing its opinion, the Oklahoma Supreme Court observed "[w]hen the judgment loses its efficacy, the lien itself ceases to operate for want of an obligation which it secures." *Id.* at 897. The district court seized on this language and concluded it amounted to a holding that the Strongs' judgment was dormant. In its view, the holding deserved preclusive effect. This would only be so, however, if the observation was necessary to the Oklahoma Supreme Court's actual

-20-

holding. It was not. The actual holding depended only on a finding (made by the state trial court) that the Strongs failed to prove they had extended their lien by any of the methods provided by § 759(C). The evidence was clear they had not done so. By contrast, Laubach produced not a whit of evidence in the district court that dormancy was litigated in the state court. While it is true, as the Oklahoma Supreme Court observed, that a dormant judgment cannot support a judgment lien, and while it may also be true that one might infer from the supreme court's extended discussion of dormancy in relation to the Strongs' judgment lien that dormancy of the judgment would provide an independent and sufficient basis for finding the judgment lien a nullity, this was not the ground offered by the state trial court for its decision. Nor was it the ground offered by the supreme court in affirming the trial court's decision. In short, the Oklahoma Supreme Court's observation about dormancy is collateral, rather than necessary, to its holding. Without more, Laubach has not met his burden of showing that preclusive effect should be given to the resolution of the dormancy issue on the basis it was "necessarily" decided by the Oklahoma Supreme Court.

### C. *Assuming defensive non-mutual collateral estoppel is both recognized in Oklahoma and available in this case, whether it was correctly applied by the district court*

Even if defensive non-mutual collateral estoppel is both recognized in Oklahoma and available in this case, Laubach must still demonstrate he is entitled to its application. To do this, he must show the Strongs enjoyed "a full and fair opportunity

to litigate the [dormancy] issue in the earlier proceeding[] and fairness [is] present[.]" *Cities Serv. Co.,* 980 P.2d at 124. As we have already noted, the record demonstrates dormancy was not an issue in the state trial court. This being so, it would be unfair to conclude the Strongs enjoyed a full and fair opportunity to litigate it. As a result, the district court abused its discretion in applying defensive non-mutual collateral estoppel to give preclusive effect to the Oklahoma Supreme Court decision on the dormancy question.

> **D.**    ***Assuming defensive non-mutual collateral estoppel is recognized in Oklahoma, is available in this case and was correctly applied by the district court, whether equitable considerations nonetheless justify denying the defense to Laubach***

Modern authority suggests that even where an issue was actually and necessarily determined in a prior action, a party to that action may not be precluded from relitigating the issue under certain circumstances, including where "[t]here is a clear and convincing need for a new determination of the issue . . . because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action," or "because the party sought to be precluded, as a result of . . . special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." Restatement (Second) of Judgments § 28(5)(b), (c) (1982). A stranger to the first action, as in the case presented here, may be denied the benefit of collateral estoppel to bar relitigation of an issue for the reasons just stated and also where "compelling circumstances make it appropriate that the party

-22-

be permitted to relitigate the issue." *Id.* § 29(8). In other words, equitable considerations temper the availability of the defense.

Even assuming defensive non-mutual collateral estoppel is recognized in Oklahoma and is otherwise available in and applicable to this case, equitable considerations justify denying the defense to Laubach. The law should prevent, not promote, injustice. He failed to pay a just debt. In order to preserve their collateral, the Strongs paid the premiums on Laubach's term life insurance policy. It is clear they understood the summary judgment proceedings in the Oklahoma district court to target only lien priority. After all, they had ample evidence of garnishment summonses issued by the federal court to establish their judgment had not gone dormant. Under these circumstances, to permit Laubach to advantage himself by invocation of a doctrine intended to promote conservation of resources and finality would amount to nothing less than unjust enrichment. *See Miller v. Miller,* 956 P.2d 887, 897 (Okla. 1998) ("The purpose of issue preclusion is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." (internal quotation marks omitted)).

### *Conclusion*

We REVERSE the order of the district court denying the Strongs' motion to vacate the court's previous order vacating its confirmation of the sale of the term life insurance policy and REMAND to afford the Strongs an opportunity to demonstrate that

they have prevented dormancy of their judgment by timely enforcement process in the federal district court and for further proceedings consistent with this order and judgment.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge